# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LANCE BASSETT,

    Petitioner,

vs.

WARDEN, SHERYL FOSTER, et al.,

    Respondents.

Case No. 2:05-CV-00745-RCJ-(LRL)

**ORDER**

    Before the Court are the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#8), Respondents Answer (#27),[1] and Petitioner's Opposition (#38). The Court finds that Petitioner is not entitled to relief and denies the Petition (#8).

    After a jury trial in the Fifth Judicial District Court of the State of Nevada, Petitioner was convicted of trafficking in more than 28 grams of methamphetamine, a schedule I controlled substance, offering, attempting, or committing an unauthorized act relating to a controlled substance, conspiracy, and possession of a controlled substance. Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 3 (#19-2, p. 12).[2]

    Petitioner then filed a state-court habeas corpus petition. The district court denied the petition. Ex. 7 (#19-7, p. 2). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 8 (#19-7, p. 8).

---

[1] This document was incorrectly captioned as a motion to dismiss.

[2] Page numbers in parentheses refer to the Court's computer images of the documents.

Petitioner then filed the current § 2254 petition. It containes two grounds.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed, 545 U.S. 1165 (2005).

Ground 1 has five claims of ineffective assistance of trial counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the

attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In Ground 1A, Petitioner claims that trial counsel failed to investigate the actual amount of methamphetamine recovered. Petitioner argues that had counsel so investigated, then Petitioner would have been convicted of trafficking in a smaller amount, which would have led to a lower sentence. The Nevada Supreme Court stated, "Further, Bassett's argument that the lab report was erroneous with respect to the amount of methamphetamine recovered is not convincing." Ex. 8, pp. 2-3 (#19-7, pp. 9-10). The trafficking statute provides:

> Except as otherwise authorized by the provisions of NRS 453.011 to 453.552, inclusive, a person who knowingly or intentionally sells, manufactures, delivers or brings into this state or who is knowingly or intentionally in actual or constructive possession of flunitrazepam, gamma-hydroxybutyrate, any substance for which flunitrazepam or gamma-hydroxybutyrate is an immediate precursor or any controlled substance which is listed in schedule I, except marijuana, or any mixture which contains any such controlled substance, shall be punished, unless a greater penalty is provided pursuant to NRS 453.322, if the quantity involved:
>
> 1. Is 4 grams or more, but less than 14 grams, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years and by a fine of not more than $50,000.
>
> 2. Is 14 grams or more, but less than 28 grams, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years and by a fine of not more than $100,000.
>
> 3. Is 28 grams or more, for a category A felony by imprisonment in the state prison:
>
> (a) For life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served; or
>
> (b) For a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years has been served, and by a fine of not more than $500,000.

Nev. Rev. Stat. § 453.3385. The trial court imposed the definite term of 25 years with parole eligibility after 10 years. Ex. 2, p. 2 (#19-2, p. 8). Scott Hardy, a criminalist with the Las Vegas Metropolitan

Police Department ("Metro"), testified that he collected for testing various substances; some were the entire amounts in their containers, and some were samples of a larger amount. For the substances that he was sampling, he estimated the volume of the total amount. Ex. 20, pp. 253-66 (#31-3, p. 26 through #31-4, p. 11). David Witkowski, another Metro criminalist, testified that he found in an aqueous solution 14.87 grams of methamphetamine, which was a sample of a larger amount that he estimated to weigh 1,540 grams. Id., pp. 281-82 (#31-5, pp. 1-2).[3] In another package, recovered in its entirety, he found 14.45 grams of a mixture of methamphetamine and red phosphorus, which is not a controlled substance. Id., p. 282 (#31-5, p. 2). Frances Beaudette, a third Metro criminalist, tested several small amounts, recovered in their entireties, that totaled 5.28 grams of methamphetamine. Id., p. 292 (#31-5, p. 12). Petitioner first argues that the finding of the identical amounts of 14.45 grams of methamphetamine and 14.45 grams of red phosphorus is incredulous. Petition, p. 3 (#8). That argument is inaccurate, because the total weight of the mixture was 14.45 grams. Petitioner next argues, "all of the weights mentioned were, at the scene estimated quantities, and none of which total 28 grams of the controlled substance Methamphetamine, which allowed the jury to speculate as to the true amount of controlled substance." Id., p. 4 (#8). However, Witkowski and Beaudette tested and weighed the recovered materials in their lab. The only estimate was for the total weight of the methamphetamine, 1,540 grams, that Hardy found in the aqueous solution. Witkowski extrapolated that estimate from the actual weight of the sample, 14.87 grams, and Hardy's estimate of the volume found at the crime scene. Even if the estimate had some inaccuracies, the total amount would still so exceed the 28-gram threshold for the greatest sentence range that the inaccuracies in the estimation, along with the other packages of methamphetamine recovered, are irrelevant. The Nevada Supreme Court's decision was neither an unreasonable application of Strickland nor an unreasonable determination of fact. 28 U.S.C. § 2254(d).

---

[3] Witkowski later testified that criminalists take only small samples, and environmental technicians dispose of the rest, because the substances involved in the manufacture of methamphetamine are hazardously toxic and volatile. He witnessed a barrel on a disposal truck explode, knocking the technician off of the truck and spreading flames around. Ex. 20, p. 304-06 (#31-5, p. 24 through #31-6, p. 1).

In Grounds 1B and 1C, Petitioner claims that counsel failed to file pre-trial motions to dismiss the counts of conspiracy and trafficking, respectively. The Nevada Supreme Court held:

> Second, Bassett claimed that his trial counsel was ineffective for failing to file a pre-trial motion to dismiss his charges of conspiracy and trafficking in a controlled substance because probable cause was lacking. However, the jury determined that Bassett was guilty of conspiracy and trafficking in a controlled substance beyond a reasonable doubt. Bassett therefore failed to demonstrate that he was prejudiced by his trial counsel's failure to file a motion to dismiss these charges.

Ex. 8, p. 3 (#19-7, p. 10) (citing United States v. Mechanik, 475 U.S. 66, 70 (1986)). The Nevada Supreme Court correctly identified the rule in Mechanik, and its application of Mechanik was reasonable. 28 U.S.C. § 2254(d)(1).

In Ground 1D, Petitioner claims that trial counsel failed to communicate with Petitioner about investigations, defense witnesses, and trial preparations. The Nevada Supreme Court held:

> Third, Bassett alleged that his trial counsel was ineffective for failing to communicate with him regularly. Bassett contended that he attempted to speak with his trial counsel numerous times, but was generally unsuccessful. Bassett claimed that if his trial counsel had contacted him regularly, he would have discovered that Bassett had "valuable information" that was helpful to his defense. However, Bassett failed to adequately demonstrate that the outcome of his trial would have been altered if his trial counsel had communicated with him regularly. Consequently, the district court did not err in denying this claim.

Ex. 8, p. 3 (#19-7, p. 10). Ground 2 of the state habeas corpus petition did state that Petitioner would have provided valuable information to counsel if counsel had communicated with him. Petitioner did not explain then, nor does he explain now, what that information was, nor why he could not send that information to counsel in a letter. Consequently, the Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d)(1).

Petitioner had co-defendants, Nannette Graham and Tony Donn. Graham pleaded guilty. Graham and Petitioner were romantically involved. Graham testified at trial that Petitioner was not involved in the manufacture of methamphetamine, that he did not live where the methamphetamine lab was located, and that the male clothing found in her closet, which was not the same size as the female clothing in the closet, belonged only to her. In the closing arguments, the prosecution charged Graham with fabricating her testimony. In part of Ground 1D, Petitioner argues that early in the proceedings his trial counsel should have contacted Graham's counsel, John Momot, about statements that Graham

made to Momot that could corroborate her trial testimony. By the time that counsel contacted Momot, Momot had forgotten much of what Graham had told him, and the trial court denied a motion to continue the trial until Momot could testify. Petition, p. 8 (#8). Petitioner argues that Momot could have testified that Graham told him the same thing earlier. A prior consistent statement is not hearsay when offered to rebut a charge that the declarant's testimony is fabricated. Nev. Rev. Stat. § 51.035(2)(b). The Court will assume for the moment that Graham and Momot would have waived the attorney-client privilege. Graham testified that she told Momot over the course of her criminal proceedings the same things to which she testified. Ex. 21, p. 183. She was sentenced in February 2001, and Petitioner's trial occurred in June 2001. Those statements to Momot occurred while Petitioner was facing criminal charges in this action, and while Graham was negotiating her guilty plea; in other words, both were in the same situations that they were at Petitioner's trial. The charge of fabrication would apply with equal force to Graham's statements to Momot. Petitioner has not demonstrated how Momot's testimony would have affected the outcome of the proceedings.

In Ground 1E, Petitioner claims that trial counsel was ineffective for failing to hire an investigator to interview potential state and defense witnesses.[4] The Nevada Supreme Court held:

> First, Bassett contended that his trial counsel was ineffective for failing to conduct a thorough investigation of his co-defendants, Nannette Graham and Tony Donn. . . . We conclude that Bassett did not establish that the outcome of his trial would have been different if his counsel had not committed these alleged errors. Bassett did not specify what additional information his counsel would have obtained if he had conducted a more thorough investigation of Donn and Graham. . . .
>
> Fourth, Bassett contended that his trial counsel was ineffective for failing to interview his co-defendants prior to trial. Bassett argued that his counsel would have been more prepared at trial if he had done so. However, Bassett failed to establish that his trial counsel was not sufficiently prepared at trial. Consequently, Bassett did not demonstrated that he was prejudiced by his counsel's failure to interview his co-defendants prior to trial, and we affirm the order of the district court with respect to this claim.
>
> Fifth, Bassett claimed that his trial counsel was ineffective for failing to thoroughly examine co-defendant Graham when she testified. Specifically, Bassett contented that his counsel should have questioned Graham about Bassett's involvement in methamphetamine production. Bassett further argued that his counsel should have questioned Graham about the men's clothing discovered in her bedroom. A review of

---

[4]Petitioner also claims in Ground 1E that an investigator could have investigated the amount of methamphetamine recovered. The Court ruled on that claim in its discussion of Ground 1A.

-7-

> the record reveals that Graham testified that Bassett was not involved in the production of methamphetamine. Graham additionally stated that all of the clothing found in her bedroom belonged to her. Consequently, Bassett failed to demonstrate that the outcome of the trial would have been different if his counsel had posed these questions, and the district court therefore did not err in denying this claim.

Ex. 8, pp. 2, 3-4 (#19-7, pp. 9, 10-11) (footnote omitted). Grounds 1 and 3 of the state habeas corpus petition, Petitioner claimed that counsel failed to investigate, but Petitioner did not allege what counsel would have found had he investigated further. Consequently, the Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d).

Ground 2 is a claim that appellate counsel provided ineffective assistance. Appellate counsel need not raise every non-frivolous issue on appeal to be effective. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). In Ground 2A, Petitioner claims that appellate counsel should have argued the issue of mere presence at the crime scene, and in Ground 2B, Petitioner claims that appellate counsel should have argued the issue of constructive possession. The Nevada Supreme Court held:

> First, Bassett argued that his appellate counsel was ineffective for failing to raise the issues of "mere presence" and "constructive possession" on appeal. Bassett contended that he was merely present at the scene of the crime, and there was insufficient evidence adduced at trial to show that he had constructive possession of the drugs discovered at the residence. These contentions amount to a challenge to the sufficiency of the evidence. We note that on direct appeal, Bassett's counsel argued that there was insufficient evidence to uphold his convictions, but this court concluded that sufficient evidence was presented at trial. The doctrine of the law of the case prevents further litigation of this issue and "cannot be avoided by a more detailed and precisely focused argument." Therefore, Bassett did not establish that his appellate counsel was deficient, and the district court did not err in denying Bassett relief on this claim.

Ex. 8, p. 6 (#19-7, p. 13). Appellate counsel did argue that Petitioner just happened to be present at the scene when the bust occurred. Ex. 30, pp. 8-10 (#33-8, pp. 18-20). Furthermore, as Respondents note, the trial court instructed the jurors on mere presence, constructive possession, and dominion and control. See Ex. 22, Instructions 29-35 (#33-3, pp. 11-17). Petitioner does not argue that the instructions are erroneous, and in substance appellate counsel did what Petitioner argues he should have done. Consequently, the Nevada Supreme Court reasonably applied Strickland and Barnes. 28 U.S.C. § 2254(d)(1).

. . .

. . .

-8-

1  IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus (#8) is
2  **DENIED**.  The Clerk of the Court shall enter judgment accordingly.
3  Dated: July 11, 2008

_____
ROBERT C. JONES
United States District Judge

27  (ab-p4)